**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 22-CR-20236-GAYLES (COHN)**

**UNITED STATES OF AMERICA,**
                    *Plaintiff*,
**vs.**

**RIGOBERTO CORDERO,**
                    *Defendant*.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE BELOW THE ADVISORY GUIDELINES RANGE

COMES NOW the Defendant, Rigoberto Cordero, by and through undersigned counsel, and respectfully submits this Sentencing Memorandum pursuant to 18 U.S.C. § 3553, requesting that this Honorable Court impose a sentence below the advisory Federal Sentencing Guidelines range. In support, Mr. Cordero states as follows:

## I. INTRODUCTION AND SUMMARY

Mr. Cordero respectfully urges the Court to impose a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing. In light of his personal history, lack of criminal record, compliance with pretrial conditions, extraordinary family circumstances, age and low likelihood of recidivism, a variance from the advisory range is both appropriate and just.

## II. THE DEFENDANT'S ADVANCED AGE AND EXTRAORDINQRY FAMILY CIRCUMSTANCES WARRANT A DOWNWARD VARIANCE UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), this Court is tasked with imposing a sentence that is "sufficient, but not greater than necessary" to serve the purposes of federal sentencing. Among the enumerated factors are the nature and circumstances of the offense, the history and characteristics of the

1

defendant, the need to promote respect for the law and provide just punishment, and the need to protect the public from further crimes. Mr. Cordero's age—a critical element of his individual profile—bears directly on several of these considerations and strongly supports a variance below the advisory Guidelines range.

## A. Age as a Component of the Defendant's History and Characteristics

At 61 years old, Mr. Cordero's age, combined with a previously law-abiding existence and clean criminal history, paints a picture of a man who poses no meaningful risk to society. As a mitigating factor, age is firmly grounded in the "history and characteristics of the defendant" under § 3553(a)(1). Courts have routinely held that age may be relevant where it affects the likelihood of recidivism, the ability to withstand the rigors of incarceration, or the disproportionality of a lengthy sentence relative to life expectancy. See *United States v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005) (granting downward variance in part due to defendant's age and diminished likelihood of reoffending).

## B. Age and the Decreased Risk of Recidivism

The relationship between advancing age and declining criminal behavior is not speculative—it is empirically established. According to a 2017 report by the U.S. Sentencing Commission titled *The Effects of Aging on Recidivism Among Federal Offenders*, defendants aged 60 and older reoffend at significantly lower rates than younger offenders. Only 13.4% of federal offenders aged 65 or older were rearrested within eight years of release, compared to over 60% of those under 30. For older, educated defendants like Mr. Cordero, the rate drops even further. These statistics underscore that further incapacitation serves no substantial public safety interest in this case.

## C. Age and the Proportionality of Punishment

A Guidelines sentence of 210 to 262 months—17 to nearly 22 years—would carry vastly different consequences for Mr. Cordero than it would for a younger person. Such a sentence would likely amount to a de facto life term, rendering rehabilitation, family reunification, and any meaningful post-incarceration life impossible. This disproportionality weighs heavily against a Guidelines sentence and in favor of a more tailored, compassionate approach. As recognized by several courts, including in *United States v. Martinez*, 870 F.2d 650 (D.C. Cir. 1989), lengthy imprisonment for older, first-time offenders often fails to meaningfully serve sentencing goals and instead imposes excessive punishment in violation of the parsimony principle.

## D. The Impact of Incarceration on Older Individuals

The Federal Bureau of Prisons is ill-equipped to meet the complex medical and mental health needs of an aging inmate population. Numerous reports have documented systemic shortcomings in geriatric care within BOP facilities. Mr. Cordero, who already experiences age-related health limitations, is likely to endure harsher conditions than younger inmates, further justifying a more lenient, community-based alternative that would fulfill the purposes of § 3553(a)(2)(D) (providing correctional treatment in the most effective manner).

### E. Extraordinary Family Circumstances

Mr. Cordero's minor daughter, Sabrina Cordero, has suffered profound psychological trauma as a result of the events surrounding this case. (PSR ¶¶ 59–60).She has been diagnosed with acute depression and anxiety disorder and has exhibited suicidal ideations since April 2024. Sabrina is currently undergoing psychiatric treatment and requires close parental support and supervision. Her condition began to deteriorate following the 2022 arrests of both her parents—a

3

traumatic event she witnessed firsthand—and has worsened significantly since her father's conviction.

In addition, Mr. Cordero's daughter, Sabrina, has been diagnosed with abnormal tissue growth in her brain, specifically a pituitary microadenoma. At this time, it remains unclear whether the tumor is benign or malignant, and her medical team has not yet reached a definitive diagnosis. Sabrina is currently undergoing chemotherapy as part of a comprehensive treatment plan aimed at reducing the size of the tumor. Given the location and unknown progression of the growth, her condition is medically delicate and demands ongoing monitoring and care. She requires not only consistent medical supervision but also emotional and parental support, both of which Mr. Cordero has historically provided. (Supporting medical documentation will be submitted in a separate filing under seal.)

Throughout her life, Mr. Cordero and his wife have served as Sabrina's primary caregivers. With both now facing incarceration, there is serious concern about who will provide the consistent, compassionate care she urgently needs. The disruption of this essential parental relationship risks exacerbating her already fragile mental state, raising grave concerns about her long-term well-being and stability (PSR ¶¶ 59–60).

Furthermore, Mr. Cordero is a grandfather to four grandchildren, two of whom are his biological descendants. His role in their lives has been emotionally significant, and his absence has already had a measurable psychological impact. The strength of the bond between Mr. Cordero and his grandchildren is evidenced by their repeated efforts to maintain contact and visit him during his detention. This broader familial disruption—compounded by Sabrina's condition—

underscores the exceptional nature of Mr. Cordero's family circumstances and further supports a downward variance under 18 U.S.C. § 3553(a).

### III. PENALTY FOR EXERCISING SIXTH AMENDMNENT RIGHT TO TRIAL

On March 10, 2025, Senior Judge Jed. S. Rakoff of the Southern District of New York, published an opinion expressing concerns about penalizing individuals for exercising their right to a public trial. In *United States v. Teimuraz Tavberidze*[1], the Court refused to penalize the defendant for exercising his right to go to trial and criticized the system that is designed to create barriers upon the defendant's rights to a trial by jury. The concern was described in the initial paragraph of the opinion, a copy of which has been included as Defendant's *Exhibit A*. In its opinion, the Court writes…...

> The Sixth Amendment to the U.S. Constitution guarantees every person accused of a federal felony the right to a speedy and a public trial before a jury of the accused's peers. See U.S. Const. amend. VI. Among the many important purposes this Amendment serves, one of the most vital is exposing to public scrutiny, and community approval or disapproval, just how our criminal justice system operates. Yet, in realty, these functions are no longer being served, for the jury trial has been replaced, almost exclusively, by a system of secret plea-bargaining negotiations behind closed doors. Thus, in 2024, only 2.4 percent of all federal felony indictments went to trial, and this paltry percentage has remained more or less constant for the past decade and more. See Criminal Defendants Disposed of, by Type of Disposition and Offense, During the 12-Month Period Ending June 30, 2024, Table D-4, U.S. Courts (2024)….
>
> ….Why do so few cases go to trial? One reason is the so-called "trial penalty." Since a prosecutor typically charges -- and is currently required to charge at the outset -- the most serious crimes she can prove, a plea bargain to a lesser charge reduces the risk of the often much higher penalty a defendant would face if convicted at trial. ……
>
> ……Moreover, even in those cases where the charges do not carry mandatory minimum prison terms, the Sentencing Guidelines ("Guidelines") effectively

---

[1] SDNY 23 -CR- 585-03 JSR

reinforce the trial penalty by reducing the offense level calculation by two points if the defendant "clearly demonstrates acceptance of responsibility" by pleading guilty, and by a third point if, in the Government's view, the defendant has pled guilty quickly enough to permit the prosecutor to avoid preparing for trial. U.S.S.G. § 3E1.1……

…..In a small effort to try to mitigate the trial penalty, this Court, where appropriate (as in cases involving a single crime or unified criminal activity where no mandatory minimum is involved), typically informs an accused that if he goes to trial and is convicted, the Court **will** not impose a greater sentence than if he pleads guilty to the same activity…."

While Mr. Cordero's decision to withdraw his prior guilty plea and proceed to trial may, in hindsight, appear ill-advised, it was rooted in his sincere belief in his innocence—particularly regarding the possibility that his long-time family home, purchased in 2006, could be forfeited as a substitute asset due to the charged conduct. Exercising his constitutional right to a public trial by jury, as guaranteed by the Sixth Amendment, should not be held against him at sentencing. The right to contest criminal charges before a jury of one's peers is a cornerstone of the American justice system, and Mr. Cordero should not be penalized for invoking it in good faith.

### IV. CONCLUSION

As the Supreme Court noted in *Koon v. United States*, 518 U.S. 81 (1996), sentencing is an individualized process. Mr. Cordero's case presents unique mitigating factors—age, family circumstances, exemplary pretrial conduct, and low risk of recidivism—that warrant a variance from the guidelines.

**WHEREFORE**, Mr. Cordero respectfully requests that this Honorable Court impose a sentence below the advisory guidelines, consistent with the goals and principles of 18 U.S.C. § 3553(a).

Respectfully submitted,

By: /s/ *Joaquin G. Perez*
Joaquin G. Perez, Esq.
Florida Bar #: 335339
Law Offices Joaquin Perez
6790 Coral Way, 3rd Floor
Miami, FL 33155
Phone: (305) 261-4000
Email: jplaw1@bellsouth.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was electronically filed with the Clerk of the Court through the CM/ECF system, resulting in notice to opposing counsel of the filing, on this 13th day of May 2025.

/s/ *Joaquin G. Perez*
Joaquin G. Perez, Esq.
Law Offices of Joaquin Perez